UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MICHAELA HUFFMAN,<br>individually and on behalf of all others<br>similarly situated,<br><br>          Plaintiffs,<br><br>v.<br><br>CREDICO (USA) LLC,<br><br><br>          Credico. | Civil Action No. _____<br><br>**JURY DEMANDED** |

**COLLECTIVE ACTION COMPLAINT**

I. **INTRODUCTION**

1. This collective action is brought by Michaela Huffman ("Plaintiff"), on behalf of herself and all similarly situated workers who choose to opt-in to this action, who have worked for Credico (USA) LLC ("Credico") and its subcontractors, promoting Credico's clients' products and services. Credico and its subcontractors have been operating as joint employers of Plaintiff, and of all agents promoting Credico's clients' products and services. Credico has perpetrated a nationwide pyramid scheme, whereby a network of over 200 companies across the country operate as Credico's subcontractors, and contract with agents who provide face-to-face marketing services for Credico's clients.

2. Credico and its subcontractors have misclassified these agents as independent contractors and, in so doing, have violated the federal Fair Labor Standard Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.*, by failing to pay them minimum wage for all hours worked, and overtime for hours worked over 40. As a precondition of their work with Credico, the agents are required to

participate in training. Credico's agents are not paid at all during this training period. Upon completion of their training, Credico's agents are required to work six days per week, between 10 and 12 hours per day, are instructed in the details of their job performance, and are monitored and reviewed frequently. Credico and its subcontractors pay their agents solely a set fee per qualified customer signed up. As a result of Credico and its subcontractors' payment scheme, these agents have received an hourly rate that is less than the federal minimum wage, and have not been paid overtime, although they consistently work over 40 hours in a week.

3.  Plaintiff brings her claims under the FLSA on behalf of similarly situated agents who have worked for Credico nationwide, who may choose to opt in to this case, pursuant to 29 U.S.C. § 216(b). Plaintiff seeks restitution of all wages of which she and these similarly situated individuals were deprived, payment for training time, and all other relief to which they are entitled.

## II. JURISDICTION AND VENUE

4.  This Court has general federal question jurisdiction over this matter pursuant to 28 U.S.C. § 1331 because Plaintiff has brought claims pursuant to the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq*.

5.  The Southern District of New York is the proper venue for this action pursuant to 28 U.S.C. § 1391(b)(2) because Plaintiff worked for Defendant and its subcontractor in New York, New York, where a substantial part of the events giving rise to Plaintiff's claims occurred.

6.  This court has personal jurisdiction over Defendant Credico (USA) LLC, because Credico employed Plaintiff's services, has violated the FLSA in New York, and has chosen to maintain substantial contacts with New York.

## III. PARTIES

7. Plaintiff Michaela Huffman is an adult resident of New York. Ms. Huffman worked for Credico and its subcontractor Winmor Inc. ("Winmor") promoting Credico's clients' products and services in New York, New York, from January 2015 through April 2015, worked for Credico and its subcontractor ZipInc in April 2016, and worked for Credico and its subcontractor McKenzie Holland Inc. ("McKenzie Holland") in California from May 2016 to July 2016.

8. Plaintiff brings her claims for failure to pay minimum wage and failure to pay overtime in violation of the FLSA on behalf of similarly situated workers nationwide, who may choose to opt in to this action pursuant to 29 U.S.C. § 216(b).

9. Defendant Credico (USA) LLC ("Credico"), is a Delaware corporation with its principal place of business located at 525 W. Monroe Street, Suite 2350, Chicago, Illinois 60661.

## IV. STATEMENT OF FACTS

### A. Credico was Plaintiff's Joint Employer

10. Defendant Credico contracts with clients in the telecommunications and energy industries, as well as charitable organizations, to provide face-to-face marketing services through its network of workers located around the country. Credico's clients have included six Fortune 500 companies, including Verizon Communications, Inc., Sprint/United Management Company, Inc., Comcast Cable Communications, and AT&T.

11. Credico has set up a fissured employment scheme, through which it attempts to shield itself from liability for the workers performing marketing services for its clients. These workers cannot contract directly with Credico, but instead, must associate with one of the subcontractors in Credico's nationwide network, such as Winmor, ZipInc, or McKenzie Holland.

12. Credico determines the criteria a worker must meet in order to start her own company in the Credico network. These criteria include the number of other workers whom the potential business owner has recruited for Credico, and the amount of money the potential business owner has to start her company. Once Credico determines that a worker can create her own company, it has control over the location in which the company will operate, and for which Credico client its workers will provide services.

13. Credico's clients pay Credico a portion of the revenue that each of its subcontractors generate by signing up new customers for Credico's clients.

14. Winmor, ZipInc and McKenzie Holland are three of the face-to-face marketing subcontractors in Credico's network.

15. Workers providing face-to-face marketing services, including Plaintiff, are an integral part of Credico's business, where Credico's business is to provide face-to-face marketing services to its clients.

16. Prior to beginning work for Credico's subcontractors, Plaintiff was required to meet Credico's requirements, including passing a background check, and completing required paperwork.

17. Credico provided Plaintiff with the tablet necessary to perform her work to sign up customers for Credico's clients' products and services.

18. At Winmor, ZipInc, and McKenzie Holland, Plaintiff was required to follow the "Management Training Program," which is utilized by all subcontractors in Credico's network. This program dictates workers' schedules, the manner in which the companies interview and train their workers, the manner in which the workers can be promoted, and the manner in which the workers approach potential customers.

19. Credico's clients paid Credico each time Plaintiff signed up a qualified customer for its products or services.

20. Credico's subcontractors cannot work with other putative joint employers because their contracts contain a non-compete clause covering all territories in which Credico operates. As a result, Credico's subcontractors provide work exclusively for Credico.

21. Credico enters into contracts that are nearly identical with each of its subcontractors.

22. Credico supervises individuals performing face-to-face marketing services for its clients, such as Plaintiff, through its National Account Managers. Credico's National Account Managers, who are employed by Credico and typically work from its headquarters in Chicago, are in constant communication with Credico's owners regarding the progress of their workers, such as Plaintiff. Credico's National Account Managers visit subcontractors' offices in person to "audit" and observe the subcontractors and their workers, and report the results to Credico's management.

23. Credico also supervises individuals performing face-to-face marketing services for its clients through its subcontractor owners, such as Colin Moore of Winmor, Kai Petrich of ZipInc, and Jor Parrish of McKenzie Holland, acting as its agents. Mr. Moore, Mr. Petrich, and Mr. Parrish monitored Plaintiff's daily schedule, hours worked, number of customer sign-ups, and gave her regular feedback regarding her performance.

24. Credico had the right to terminate workers such as Plaintiff, and has exercised this right.

B. **Plaintiff's Work for Credico and its Subcontractors**

25. While working for Credico and WinMor, ZipInc and McKenzie Holland, Plaintiff

was required to follow Credico's Management Training Program, which set out a highly regimented daily schedule for her work and required her to follow a specific script when approaching potential customers. Plaintiff was required to work approximately 12 hours per day, six days a week.

26. In addition, Plaintiff was instructed by Credico and its subcontractors in the details of her job performance and the hours and locations at which she was required to work. For instance, Plaintiff was instructed to work during certain hours, and within a specific territory designated by Credico and its subcontractors. In addition, Credico's subcontractors were required to enter Plaintiff's territory for each day into Credico's ARC Portal.

27. Plaintiff was not authorized to complete a transaction with a customer – Credico's clients retained the right to approve or deny each customer signed up by Plaintiff. Plaintiff was paid only for approved customers which she signed up.

28. Plaintiff was required to report to the office each morning for mandatory team meetings and training sessions. At the end of these meetings, Plaintiff received a tablet, issued by Credico, which she used to sign up customers for the day.

29. Plaintiff was assigned to a street location at which she was supposed to sign up customers for the day.

30. Plaintiff was often accompanied to her assigned street location by a more experienced worker who supervised Plaintiff's performance during her shift.

31. At the end of her shift, Plaintiff was required to report back to the office at a set time in the evening to participate in a mandatory meeting to cover the workers' number of sign-ups for the day.

32. Plaintiff was required to meet a target number of weekly sign ups, which was

tracked via Credico's online ARC portal. Plaintiff could be terminated for failure to meet these targets.

33. By virtue of the extensive control Credico and its subcontractors exerted over her, Plaintiff was Credico and its subcontractors' employee.

**C.    Credico' Failure to Pay Minimum Wage or Overtime Pursuant to the FLSA**

34. Credico's workers are paid solely a set fee for each qualified customer that they sign up for its clients' products or services. If the customer does not qualify, the worker does not get paid.

35. As a result of Credico's payment scheme, its workers routinely earn an hourly rate that is less than the federal minimum wage.

36. Credico's workers are typically required to work 60 to 72 hours per week. As a result of Credico's payment scheme, these workers have not been paid time-and-a-half for hours worked over 40 in a single week.

**COUNT I**

**FAILURE TO PAY MINIMUM WAGE IN VIOLATION OF FLSA**

37. During many weeks, Plaintiff and other agents promoting Credico's clients' products and services fail to earn the federal minimum wage for all hours worked. Credico's knowing and willful failure to pay Plaintiff and other similarly situated individuals minimum wage violates the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq*. This claim is brought by Plaintiff on behalf of a class of similarly situated individuals, who may choose to opt in to this case, pursuant to 29 U.S.C. § 216(b).

## COUNT II

## FAILURE TO PAY OVERTIME IN VIOLATION OF FLSA

38. Every week, Plaintiff and other agents promoting Credico's clients' products and services are required to work over 40 hours. Plaintiff and these similarly situated agents are not compensated time-and-a-half for those hours worked over 40 in one week. Credico's knowing and willful failure to pay Plaintiff and other similarly situated individuals overtime compensation to which they are entitled violates the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq*. This claim is brought on behalf of a class of similarly situated individuals, who may choose to opt in to this case, pursuant to 29 U.S.C. § 216(b).

## JURY DEMAND

Plaintiff requests a trial by jury on all of her claims.

WHEREFORE, the Plaintiff requests that this Court enter the following relief:

1. Permission for plaintiffs to notify fellow workers of their right to opt-in to this action to pursue a claim under the FLSA, pursuant to 29 U.S.C.
2. § 216(b);
3. Restitution for the federal minimum wage;
4. Restitution for the federal overtime;
5. Liquidated damages;
6. Attorneys' fees and costs;
7. Any other relief to which the Plaintiffs and class members may be entitled.

Respectfully submitted,

MICHAELA HUFFMAN, individually and on behalf of all others similarly situated,

By her attorneys,

   /s/ Jill Kahn
Jill Kahn
Harold Lichten (*pro hac vice anticipated*)
Olena Savytska (*pro hac vice anticipated*)
LICHTEN & LISS-RIORDAN, P.C.
729 Boylston Street, Suite 2000
Boston, MA 02116
(617) 994–5800
jkahn@llrlaw.com
hlichten@llrlaw.com
osavytska@llrlaw.com

Dated:     June 6, 2017